UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

ALBERTO NIEVES,

      Plaintiff,

- against -

NEW YORK CITY POLICE
DEPARTMENT, POLICE OFFICER
CARRASQUILLO, DETECTIVE
DEPAOLIS, SERGEANT MACKAY,
DETECTIVE MULROY, SERGEANT
RAGNI, AND POLICE OFFICER TASS,

      Defendants.

------------------------------------------------- X

OPINION AND ORDER

07 Civ. 5751 (SAS)



**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

Alberto Nieves, an inmate proceeding *pro se*, brings suit under section 1983 of title 42 of the United States Code and New York law alleging unreasonable entry and search of a residence, false arrest, malicious prosecution, conspiracy, and intentional infliction of emotional distress.[1] Defendants the New York City Police Department ("NYPD"), Detectives DePaolis and Mulroy, Sergeants MacKay and Ragni, and Police Officers Carrasquillo and Tass now

---

[1]    *See* Complaint ("Compl.") ¶¶ 27-40.

1

move for summary judgment. For the following reasons, defendants' motion is granted in part and denied in part.

## II. BACKGROUND[2]

On July 19, 2004, Nieves left his residence at 735 Pelham Parkway, Bronx, New York around noon to go to Edward Vandien's apartment.[3] Nieves often frequented Vandien's apartment to smoke marijuana or "hang out" with women and stayed overnight about five times per month.[4] Nieves had a key to the apartment and kept two sweaters, two jackets, a video gaming system, and DVDs there.[5] On this occasion, Nieves arrived at Vandien's apartment at approximately

---

[2] The facts in this section are drawn from exhibits attached to the Declaration of Diep Nguyen, defendants' counsel, in Support of Defendants' Motion for Summary Judgment ("Nguyen Decl."). Defendants submitted a Local Civil Rule 56.1 Statement of Undisputed Facts ("defendants' 56.1 Statement"). Plaintiff did not properly respond, rendering the facts contained in defendants' 56.1 Statement "deemed admitted." *Berdugo v. City of New York*, No. 03 Civ. 7319, 2004 WL 1900357, at *1 n.1 (S.D.N.Y. Aug. 24, 2004) (citing Southern District of New York Local Rule 56.1(b)). Defendants' 56.1 Statement lacks clarity with regard to its explanation of facts, particularly when considered in light of its accompanying exhibits. As a result, when necessary I will refer to source documents, including a lengthy excerpt from Nieves' deposition. *See* Deposition of Alberto Nieves, Ex. C to Nguyen Decl. ("Nieves Dep."). Nieves does not dispute the facts as provided in these source documents except where noted.

[3] *See* Nieves Dep. at 32-33, 79.

[4] *Id.* at 95.

[5] *See id.* at 94-97.

2

1:00 p.m., intending to stay until 4:00 p.m.[6] After Nieves arrived, Vandien left him alone in the apartment.[7] Nieves then smoked marijuana he had purchased on his way over and fell asleep.[8]

That same day, Kim Freytes called Detective DePaolis.[9] Detective DePaolis was investigating the shooting of Ms. Freytes' brother, Jerry Freytes, which had occurred nine days earlier.[10] Ms. Freytes told Detective DePaolis that Mr. Freytes had just told her that "Poopie's brother" was the shooter.[11] Ms. Freytes did not know Poopie's brother.[12] Detective DePaolis asked Sergeant MacKay, the Intelligence Sergeant for the forty-seventh precinct, if he could identify Poopie's brother.[13] Sergeant MacKay recognized him as Nieves and said

---

[6] *See id.* at 79-80.

[7] *See id.* at 103.

[8] *See id.* at 81-82, 104-105.

[9] *See* Complaint Follow-Up Information & Report, Ex. D to Nguyen Decl. ("Complaint Follow-Up"); Affidavit of Kim Freytes, Jerry Freytes' sister, in Support of Defendants' Summary Judgment Motion ("Freytes Decl.") ¶¶ 4, 7.

[10] *See* Complaint Follow-Up; Freytes Decl. ¶¶ 2-3, 8. Mr. Freytes died of complications from the shooting in 2006. *See* Freytes Decl. ¶ 13.

[11] Complaint Follow-Up. *Accord* Freytes Decl. ¶¶ 4, 7.

[12] *See* Freytes Decl. ¶ 8.

[13] *See* Complaint Follow-Up.

3

that he knew where to find him.[14] Detective DePaolis told Sergeant MacKay that Nieves was wanted for a shooting.[15] At approximately 3:00 p.m., Sergeant MacKay, along with Officers Carrasquillo and Tass, and Sergeant Ragni, went to Vandien's apartment.[16] They did not have either an arrest warrant or a search warrant.

According to Nieves, when the officers arrived, they asked him to come out of the apartment, which he did.[17] The door to the apartment closed behind him.[18] The officers handcuffed Nieves, patted him down, and took him outside to be held in an NYPD van.[19] The officers then entered Vandien's closed apartment and conducted a search, finding marijuana on top of the television in the living room and crack-cocaine floating in the toilet.[20] After approximately forty-five minutes, Officer Carrasquillo entered the van and told Nieves that narcotics

---

[14] *See id.*

[15] *See id.*

[16] *See* Nieves Dep. at 118.

[17] *See id.* at 110-111.

[18] *See id.* at 111.

[19] *See id.* at 110-118.

[20] *See* Complaint Follow-Up.

4

had been found in the apartment.[21]

Defendants have a different account of the arrest. According to defendants, when the officers arrived at the apartment, Sergeant MacKay observed Nieves leaving the apartment.[22] When Nieves saw Sergeant MacKay, he re-entered the apartment and tried to close the door.[23] Nieves stopped, opened the door, and invited Sergeant MacKay inside the apartment.[24] Once inside, the officers saw the marijuana and crack-cocaine.[25] It is not clear from defendants' evidence whether Nieves was arrested before or after the narcotics were observed.

Detective DePaolis and Detective Mulroy were on route to the hospital to obtain a positive identification from Mr. Freytes when they learned of Nieves' arrest.[26] They proceeded to Vandien's apartment instead.[27] Upon their arrival, Nieves was transferred to Detective DePaolis' squad car and transported to

---

[21] See Nieves Dep. at 175.

[22] See Police Notes, Ex. E to Nguyen Decl.

[23] See id.

[24] See id.

[25] See Complaint Follow-Up.

[26] See id.

[27] See id.

the precinct for interrogation.[28] During the interrogation, Nieves admitted that the narcotics were his, but denied shooting Mr. Freytes.[29] Later that day, Detective DePaolis went to the hospital to show Mr. Freytes a photo array.[30] Mr. Freytes identified Nieves as someone present at the shooting, but said that Nieves was not the shooter.[31] As a result of his July 19, 2004 arrest, Nieves was indicted by the Grand Jury on five narcotics related offenses.[32] Nieves was never charged with Mr. Freytes' shooting.[33] Nieves is currently serving a ten-year sentence in federal prison.

---

[28]     *See* Nieves Dep. at 117.

[29]     *See id.* at 174-175.

[30]     *See* Complaint Follow-Up.

[31]     *See id.*

[32]     *See* Grand Jury Indictment No. 39829C-2004, Ex. I to Nguyen Decl. (the "Indictment"). While the Indictment was pending, Newton was arrested on August 2, 2005 and taken into federal custody. *See* Nieves Dep. at 181-182. The Bronx County District Attorney's Office then deferred prosecution of the Indictment in favor of the federal prosecution and dismissed the Indictment. *See* Recommendation for Dismissal by Assistant District Attorney Valerie Friedman, Ex. K to Nguyen Decl ("Dismissal Recommendation"); 2/15/05 Decision and Order of the Honorable Efrain Alvarado, Ex. J to Nguyen Decl. Nieves was prosecuted by the federal government on at least some, and possibly all, of the same charges. *See* Dismissal Recommendation.

[33]     *See* 7/19/04 Arrest Report, Ex. H to Nguyen Decl.

6

## III. APPLICABLE LAW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[34] "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law.'"[35] "[T]he burden of demonstrating that no material fact exists lies with the moving party . . . ."[36]

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."[37] To do so, the non-moving party must do more than show

---

[34] Fed. R. Civ. P. 56(c)(2).

[35] *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 34 (2d Cir. 2008)).

[36] *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)). *Accord Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

[37] *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

that there is "'some metaphysical doubt as to the material facts,'"[38] and it "'may not rely on conclusory allegations or unsubstantiated speculation.'"[39] However, "'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[40]

## IV. DISCUSSION

### A. Unreasonable Entry and Search

Nieves claims that the officers' warrantless entry and subsequent search of Vandien's apartment violated his Fourth Amendment rights.[41] Assuming *arguendo* that Nieves has standing to assert this claim,[42] Nieves provides no evidence of any resulting injury other than his conviction and imprisonment, which

---

[38] *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[39] *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

[40] *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

[41] *See* Compl. ¶¶ 27-29.

[42] *See Minnesota v. Carter*, 525 U.S. 83, 90 (1998) (holding that while owners, tenants, and overnight guests may have standing to assert claims for unreasonable entry and search of a residence, a guest who is "merely present with the consent of the householder may not").

are not actionable.⁴³ Summary judgment on this claim is granted.⁴⁴

B.  **False Arrest**

"'There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.'"⁴⁵ Probable cause exists "'when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'"⁴⁶ Defendants argue that Ms. Freytes' uncorroborated

---

⁴³ *See Heck v. Humphrey*, 512 U.S. 477, 487 n.7 (1994) ("In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which, we hold today does *not* encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned).") (citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308-10 (1986) (holding that damages for a constitutional violation under section 1983 must be based on actual, compensatory injury – including monetary harms, impairment of reputation, personal humiliation, and mental anguish – suffered by the plaintiff)).

⁴⁴ Nieves makes an application under Federal Rule of Civil Procedure 56(f) claiming that additional discovery is needed. *See* Rule 56(f) Affidavit. Nieves seeks an affidavit from Vandien to support his standing argument. Because Nieves' claim lacks merit regardless of whether he has standing, Vandien's affidavit could not create a genuine issue of material fact resulting in the denial of summary judgment. *See Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995).

⁴⁵ *Williams v. Town of Greenburgh*, 535 F.3d 71, 78-79 (2d Cir. 2008) (quoting *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)).

⁴⁶ *Shain v. Ellison*, 273 F.3d 56, 67-68 (2d Cir. 2001) (quoting *Singer*, 63 F.3d at 118). *Accord Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).

9

hearsay statement is sufficient to establish probable cause.[47] I disagree. Ms. Freytes was not an eyewitness to the shooting, had no personal knowledge of the shooter's identity, and defendants took no steps to corroborate her statement prior to arresting Nieves.[48]

Once the narcotics were discovered, however, the officers had probable cause to arrest Nieves.[49] That the narcotics were found pursuant to an arguably unreasonable entry and search is irrelevant because the fruit of the poisonous tree doctrine is inapplicable to civil actions arising under section 1983.[50]

---

[47] *See* Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Def. Mem.") at 12.

[48] *See Cortez v. McCauley*, 478 F.3d 1108, 1119 (10th Cir. 2007) (en banc) (holding that officers lacked probable cause to execute a warrantless arrest where they "relied, without any investigation, exclusively on the double-hearsay statement of a nurse who had no personal knowledge of the actual facts . . . especially given that officers could easily have interviewed the nurse . . . or the [victim with whom the nurse spoke] before moving to arrest [plaintiff]").

[49] *See United States v. Heath*, 455 F.3d 52, 57 (2d Cir. 2006) (holding that where contraband is left in the public space of a residence, a police officer may "conclude that guests and residents of the home were highly likely to see the contraband in the ordinary course"); *United States v. MacDonald*, 916 F.2d 766, 770 (2d Cir. 1990) (holding that undercover agent's observation of cocaine and marijuana in plain view throughout the apartment containing six men provided probable cause to arrest all six occupants); *United States v. Jelks*, 273 F. Supp. 2d 280, 285 (W.D.N.Y. 2003) (noting that the bathroom is a common area).

[50] *See Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999) (rejecting plaintiff's claim for damages under section 1983 for his arrest, conviction, and incarceration based on handguns discovered during an unlawful stop). Nieves contends that *Townes v. City of New York* should be limited to motor

Therefore, Nieves' false arrest claim is viable, but only for the period between his initial arrest and the discovery of the narcotics.[51] A genuine issue of material fact exists as to the length of that period and may have been as short as a few seconds or as long as forty-five minutes.[52]

Nevertheless, all of the defendants other than Detective DePaolis are entitled to summary judgment.

> If facts supporting probable cause to arrest are ultimately found not to have existed, an arresting officer will nonetheless be entitled to immunity from suit based on "arguable probable cause," which requires that he or she show that it was objectively reasonable to believe that probable cause existed or that "officers of reasonable competence could disagree on whether the probable cause test was met."[53]

---

vehicle stops. *See* Plaintiff's Opposition to Summary Judgment ("Pl. Opp.") at 15. There is no support for such a limitation. *See Townes*, 176 F.3d at 145 ("We find *no case* in which the doctrine has been successfully invoked to support a section 1983 claim, and we see no reason why it could be.") (emphasis added).

[51] *See Jaegly*, 439 F.3d at 153 ("[T]he probable cause inquiry is based upon whether the facts known by the arresting officer *at the time of the arrest* objectively provided probable cause to arrest.") (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)) (emphasis added).

[52] *See* Def. Mem. at 14-15 (acknowledging that "[a]ny possible damage claim based on a violation of the plaintiff's constitutional rights during the initial stop would be limited to the very brief invasion of privacy prior to the development of probable cause for his arrest").

[53] *Finigan v. Marshall*, 574 F.3d 57, 61 (2d Cir. 2009) (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)). *Accord Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009).

No reasonable officer could have thought that he had probable cause to arrest Nieves solely on the basis of an uncorroborated hearsay identification.[54] Summary judgment as to Detective DePaolis is therefore denied. Officers Carrasquillo and Tass and Sergeants MacKay and Ragni are entitled to qualified immunity because it was objectively reasonable for them to believe that probable cause existed based on Detective DePaolis' statement that Nieves was wanted in a shooting.[55] Summary judgment is also warranted in favor of Detective Mulroy as he was not involved in Nieves' initial arrest.[56] Because the NYPD is not a suable entity, summary judgment in its favor is appropriate as well.[57]

---

[54] *See Cortez*, 478 F.3d at 1118-19 (rejecting the qualified immunity defense on similar facts).

[55] *See Anthony v. City of New York*, 339 F.3d 129, 138 (2d Cir. 2003) ("Plausible instructions from a superior or fellow officer support qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for his actions exist . . . ."); *Micalizzi v. Ciamara*, 206 F. Supp. 2d 564, 577 (S.D.N.Y. 2002) ("[A]n officer who participates in the arrest is [ ] immune from suit in his or her individual capacity under the doctrine of qualified immunity if it was objectively reasonable for him to rely on a fellow officer's report indicating the existence of probable cause.") (citations omitted).

[56] *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'") (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

[57] *See Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("[T]he NYPD is a non-suable agency of the City."). Construing Nieves'

## C. Malicious Prosecution

"'To state a claim . . . for malicious prosecution, a plaintiff must show: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice.'"[58] Here, defendants had probable cause to institute the proceedings against Nieves. He admitted that the narcotics were his, he was charged with only the narcotics violations, he was indicted after a grand jury proceeding, and he has no evidence that any defendant acted in bad faith in connection with any proceedings.[59] His malicious prosecution claim fails.[60]

---

pleadings liberally, *see Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), it could be inferred that he intended to bring a municipal liability claim against the City of New York (the "City"). *See* Pl. Opp. at 6 (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Such a claim would also fail because Nieves provides no evidence that the City has a policy, practice, or custom under which officers execute warrantless arrests based on uncorroborated hearsay statements. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 831 (1985)) (Brennan, J., concurring in part and concurring in the judgment) ("To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict *respondeat superior* liability rejected in *Monell*.").

[58] *Droz*, 580 F.3d at 109 (quoting *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003)).

[59] *See McClellan v. Smith*, 439 F.3d 127, 145 (2d Cir. 2006) ("[A] grand jury indictment gives rise to a presumption that probable cause exists and a claim for malicious prosecution in relation to the crimes described in the indictment

## D. Conspiracy

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."[61] Nieves failed to provide any facts showing that the defendants "'entered into an agreement, express or tacit, to achieve the unlawful end.'"[62] Thus, defendants are entitled to summary judgment on this claim as well.

## E. State-Law Intentional Infliction of Emotional Distress

New York General Municipal Law section 50-e requires that plaintiffs asserting state tort law claims against a municipal entity or its employees file a notice of claim within ninety days after the incident giving rise to the claim.

---

thereby is defeated . . . . [T]he presumption may be rebutted by evidence . . . that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.").

[60] *See Droz*, 580 F.3d at 109 (directing the district court to grant the defendant's motion for summary judgment on a malicious prosecution claim where it "conclud[ed] that there was probable cause as a matter of law for instituting the proceeding").

[61] *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

[62] *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009) (quoting *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003)).

Nieves concedes that he did not file a notice of claim.[63] He argues instead that defendants were "on notice" of his claims because he filed complaints with the New York City Civilian Complaint Review Board and the New York City Police Department Internal Affairs Bureau.[64] The fact that defendants may have received actual notice of Nieves' claims does not relieve him of his obligation to file a notice of claim.[65] Having failed to do so, Nieves' state-law claim is dismissed.

## V. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part. The Clerk of the Court is directed to close this motion (Docket No. 32). A conference is scheduled for February 11, 2010 at 3:00 p.m. in Courtroom 15C.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
January 26, 2010

---

[63] *See* Pl. Opp. at 18.

[64] *Id.*

[65] *See Olsen v. County of Nassau*, No. 05 Civ. 3623, 2008 WL 4838705, at *2-*3 (E.D.N.Y. Nov. 4, 2008) (rejecting plaintiff's argument that filing a complaint with the New York State Human Rights Division obviated the notice of claim requirement and dismissing plaintiff's claims).

15

## - Appearances -

**Plaintiff (pro se):**

Alberto Nieves
53224-054
U.S. Penitentiary McCreary
P.O. Box 3000
Pine Knot, Kentucky 42635

**For Defendants:**

Diep Nguyen
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, New York 10007
(212) 341-9848