UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- X

ALBERTO NIEVES,

                Plaintiff,

          - against -

NEW YORK CITY POLICE
DEPARTMENT, POLICE OFFICER
CARRASQUILLO, DETECTIVE
DEPAOLIS, SERGEANT MACKAY,
DETECTIVE MULROY, SERGEANT
RAGNI, AND POLICE OFFICER TASS,

               Defendants.

-------------------------------------------------- X

**OPINION AND ORDER**

**07 Civ. 5751 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/18/10

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

      Alberto Nieves, an inmate who was initially proceeding *pro se* but is now represented by counsel, brings suit under section 1983 of title 42 of the United States Code and New York law alleging unreasonable entry and search of a residence, false arrest, malicious prosecution, conspiracy, and intentional infliction of emotional distress against defendants the New York City Police Department ("NYPD"), Detectives DePaolis and Mulroy, Sergeants MacKay and Ragni, and Police Officers Carrasquillo and Tass.  On January 26, 2010, I granted in part and

1

denied in part defendants' motion for summary judgment in this action (the

"January 26 Opinion").[1]  On February 17, 2010, Nieves, still proceeding *pro se,*

filed an untimely motion for reconsideration of that decision.  On March 1, 2010,

Nieves's motion was denied.  Thereafter, pro bono counsel filed a notice of

appearance on his behalf on March 15, 2010.[2]

In blatant disregard for the Southern District of New York's fourteen

day deadline to file a motion for reconsideration and having given no prior notice

to the Court of their intention to do so – Nieves's counsel moved on April 26, 2010

for reconsideration.[3]  No less than *four months* had passed since the January 26

Opinion was issued and nearly *six weeks* since counsel first filed a notice of

appearance before Nieves filed this motion.  Under any calculation – including the

date on which counsel first filed a notice of appearance – this motion is

substantially untimely and is, itself, a sufficient reason to deny Nieves's motion.[4]

---

[1]      *See Nieves v. New York City Police Dept.*, No. 07 Civ. 5751, 2010 WL
3302105 (S.D.N.Y. Jan. 26, 2010).

[2]      *See* March 15, 2010 Notice of Appearance by Sean J. Young on
behalf of Nieves (Docket No. 50).

[3]      *See* S.D.N.Y. Civ. R. 6.3.

[4]      *See Sea Trade Co. Ltd. v. FleetBoston Fin. Corp.*, No. 03 Civ. 10254,
2009 WL 4667102, at *3 (S.D.N.Y. Dec. 9, 2009) ("Failure to adhere to Local
Rule 6.3's time limitations is in and of itself a sufficient reason to deny a motion
for reconsideration.").

For the most part, Nieves's motion also raises issues that are inappropriate for a motion for reconsideration. Nevertheless, Nieves has demonstrated cause to revisit this Court's decision to dismiss Nieves's illegal entry and search claims for failure to demonstrate compensatory damages. In the interest of justice, the Court grants Nieves's motion for reconsideration, but for that issue only. The remainder of Nieves's motion is denied.

## II.    BACKGROUND

On July 19, 2004, several of the defendants arrested Nieves without a warrant at an apartment owned by a friend (the "Apartment") for a shooting that had occurred nine days earlier.[5] Nieves often frequented the Apartment to smoke marijuana or "hang out" with women and stayed overnight about five times per month.[6] Nieves testified that he had a key to the apartment, kept personal items there, and occasionally contributed to expenses.[7] On this occasion, Nieves intended to stay in the apartment for the afternoon only.[8] When he arrived, the

---

[5]     *See Nieves*, 2010 WL 330205, at *1. The facts set forth in the January 26 Opinion were drawn from exhibits attached to the Declaration of Diep Nguyen, defendants' counsel, in Support of Defendants' Motion for Summary Judgment ("Nguyen Decl.").

[6]     *Nieves*, 2010 WL 330205, at *1.

[7]     *See id.*

[8]     *See id.*

3

owner of the apartment was present, but left soon after, leaving Nieves alone in the Apartment.[9] Nieves then smoked marijuana he had purchased on his way over and fell asleep.[10]

According to Nieves – although disputed by defendants – the officers then arrived at the Apartment and, with their guns drawn, ordered him out of the Apartment.[11] Nieves then left the Apartment and the door to the apartment closed behind him.[12] The officers handcuffed Nieves, patted him down, and took him outside to be held in an NYPD van.[13] The officers then entered the closed Apartment (without a warrant) and conducted a search, finding marijuana on top of the television in the living room and crack-cocaine floating in the toilet.[14] After approximately forty-five minutes, Officer Carrasquillo entered the van and told

---

[9] *See id.*

[10] *See id.*

[11] *See id.*; Deposition of Alberto Nieves, Ex. C to Nguyen Decl. ("Nieves Dep.") at 110-111 ("I could see he had his gun drawn . . . . He said, 'Nieves, come out.' . . . . I opened the door and put my hands out . . . .").

[12] *See Nieves*, 2010 WL 330205, at *1; Nieves Dep. at 111 ("I opened the door and put my hands out, I stepped out, the door closed.).

[13] *See Nieves*, 2010 WL 330205, at *1; Nieves Dep. at 111 ("[The officer] put me against the wall, handcuffed me, and they patted me down.").

[14] *See Nieves*, 2010 WL 330205, at *1.

Nieves that narcotics had been found in the apartment.[15]

Defendants have a different account of the arrest.   According to

defendants, when they arrived at the apartment, Sergeant MacKay observed Nieves

leaving the apartment.[16]  When Nieves saw Sergeant MacKay, he re-entered the

apartment and tried to close the door.[17]  Nieves stopped, opened the door, and

invited Sergeant MacKay inside the apartment.[18]  Once inside, the officers saw the

marijuana and crack-cocaine.[19]  It is not clear from defendants' evidence whether

Nieves was arrested before or after the narcotics were observed.

## III.   APPLICABLE LAW

Motions for reconsideration are governed by Local Rule 6.3 and are

committed to the sound discretion of the district court.[20]  A motion for

reconsideration is appropriate where "'the moving party can point to controlling

---

[15]    *See id.*

[16]    *See id.*

[17]    *See id.*

[18]    *See id.*

[19]    *See id.*

[20]    *See Patterson v. United States*, No. 04 Civ. 3140, 2006 WL 2067036,
at *1 (S.D.N.Y. July 26, 2006 ) ("The decision to grant or deny a motion for
reconsideration is within the sound discretion of the district court.") (citing
*McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983)).

decisions or data that the court overlooked – matters, in other words, that might

reasonably be expected to alter the conclusion reached by the court.'"[21]  A motion

for reconsideration may also be granted to "'correct a clear error or prevent

manifest injustice.'"[22]

The purpose of Local Rule 6.3 is to "'ensure the finality of decisions

and to prevent the practice of a losing party examining a decision and then

plugging the gaps of a lost motion with additional matters.'"[23]  Local Rule 6.3 must

be "narrowly construed and strictly applied so as to avoid repetitive arguments on

issues that have been considered fully by the Court."[24]  Courts have repeatedly

been forced to warn counsel that such motions should not be made reflexively to

---

[21]     *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003) (quotation marks omitted).

[22]     *RST (2005) Inc. v. Research in Motion Ltd.*, No. 07 Civ. 3737, 2009 WL 274467, at *1 (S.D.N.Y. Feb. 4, 2009) (quoting *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

[23]     *Grand Crossing, L.P. v. United States Underwriters Ins. Co.*, No. 03 Civ. 5429, 2008 WL 4525400, at *3 (S.D.N.Y. Oct. 6, 2008) (quoting *S.E.C. v. Ashbury Capital Partners*, No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001)).  *Accord Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, 233 F.R.D. 355, 361 (S.D.N.Y. 2005) ("[A] movant may not raise on a motion for reconsideration any matter that it did not raise previously to the court on the underlying motion sought to be reconsidered.").

[24]     *United States v. Treacy*, No. 08 CR 366, 2009 WL 47496, at *1 (S.D.N.Y. Jan. 8, 2009) (quotation marks omitted).  *Accord Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (holding that a court will deny the motion when the movant "seeks solely to relitigate an issue already decided").

6

reargue "'those issues already considered when a party does not like the way the

original motion was resolved.'"[25]  A motion for reconsideration is not an

"opportunity for making new arguments that could have been previously

advanced,"[26] nor is it a substitute for appeal.[27]

## IV.   DISCUSSION

### A.   Nieves's False Arrest Claims

In the January 26 Opinion, this Court dismissed Nieves's false arrest

claims against defendants Carrasquillo, Tass, MacKay, and Ragni on qualified

immunity grounds because "it was objectively reasonable for them to believe

probable cause existed" to arrest Nieves.[28]  Nieves contends that the Court erred in

finding that these defendants were entitled to qualified immunity by overlooking

the Second Circuit's decision in *Loria v. Gorman*.[29]  In *Loria,* the Second Circuit

---

[25]      *Makas v. Orlando*, No. 06 Civ. 14305, 2008 WL 2139131, at *1
(S.D.N.Y. May 19, 2008) (quoting *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001
(S.D.N.Y. 1996)).

[26]      *Associated Press v. United States Dep't of Defense*, 395 F. Supp. 2d
17, 19 (S.D.N.Y. 2005).

[27]      *See Grand Crossing,* 2008 WL 4525400, at *3.

[28]      *Nieves*, 2010 WL 3302105, at *3.

[29]      *See* Memorandum of Law in Support of Plaintiff's Motion for
Reconsideration of the Court's Opinion Granting in Part Defendants' Motion for
Summary Judgment ("Pl. Mem.") at 3-7 (citing *Loria*, 306 F.3d 1271, 1283 (2d
Cir. 2002)).

denied an officer's claim of qualified immunity where *he entered a residence*

*without exigent circumstances and executed a warrantless arrest.*[30]  In reaching

this conclusion, the Second Circuit cited the Supreme Court's seminal decision in

*Payton v. New York.*[31]  In *Payton*, the Supreme Court held that "[a]bsent exigent

circumstances [ the] *threshold [of a residence] may not reasonably be crossed*

*without a warrant.*"[32]  A suspect may not be arrested in his house without an arrest

warrant even where there is probable cause to arrest him.[33]  Nieves contends that

because the Court did not consider whether exigent circumstances existed prior to

arresting him, the Court committed clear error.

Nieves's position conveniently ignores a critical distinction between

*Loria, Payton*, and *his version* of the facts of this case – the officers did not cross

the threshold of the apartment to execute the arrest.[34]  Rather, according to Nieves,

---

[30]      *See id.*

[31]      *Loria*, 306 F.3d at 1283-84 (citing *Payton*, 445 U.S. 573 (1980)).

[32]      445 U.S. at 590.

[33]      *See id.*

[34]      Note that under defendants' version of the facts, exigent
circumstances would not be required because Nieves is alleged to have invited the
officers inside the Apartment and thus consented to the entry. *See United States v.
Snype*, 441 F.3d 119, 130 (2d Cir. 2006) ("Although warrantless searches of
private property are generally presumed to be unreasonable, the law recognizes
certain exceptions, for example, when the search is conducted pursuant to the
consent of an authorized person.") (citing *Schneckloth v. Bustamonte*, 412 U.S.

he stepped *outside* of the Apartment, concededly in response to police direction, and let the door close behind him before he was patted down and handcuffed. Recognizing that according to his own testimony the officers did not enter the Apartment to effectuate a warrantless arrest in a home, Nieves relies on *United States v. Gori*.[35]

In *Gori*, following a tip that the occupants were dealing drugs out of an apartment, two police officers began surveillance on the apartment.[36] They did not have either an arrest warrant or a search warrant.[37] About twenty or thirty minutes later, a delivery woman arrived with an order of food for that apartment.[38] The two police officers then accompanied the delivery woman to the apartment.[39] The delivery woman knocked and the occupants opened the door.[40] Both officers immediately displayed their shields, ordered all of the occupants into the hallway,

---

218, 219 (1973) and *United States v. Lewis*, 386 F.3d 475, 481 (2d Cir. 2004)).

[35]   *See* Pl. Mem. at 5 (citing *Gori*, 230 F.3d 44, 49 (2d Cir. 2000)).

[36]   *See Gori*, 230 F.3d at 47.

[37]   *See id.*

[38]   *See id.*

[39]   *See id.*

[40]   *See id.*

and arrested them.[41]  The officers then obtained the consent of one of the suspects

to enter and search the apartment.[42]  Upon doing so, the officers found and seized

physical evidence.[43]  The defendants were later charged with conspiracy to

distribute cocaine.[44]  Prior to trial, the defendants moved to suppress physical

evidence seized in the apartment on the grounds that the officers had violated the

Fourth Amendment and the *Payton* rule by constructively entering the apartment

when they ordered the individuals out of the apartment.[45]  Defendants argued that

the evidence seized should be suppressed as the fruits of an illegal seizure in

violation of the Fourth Amendment.[46]

The Second Circuit rejected the defendants' view.  The Second Circuit

agreed that the individuals were "seized" for purposes of the Fourth Amendment

when the officers, standing *outside* of the apartment, made a show of police

authority and ordered the occupants to leave the apartment.[47]  However, because

---

[41]     *See id.*

[42]     *See id.*

[43]     *See id.*

[44]     *See id.* at 48.

[45]     *Id.*

[46]     *See id.*

[47]     *See id.* at 49.

the occupants had voluntarily opened the door for an invitee (the delivery woman),

they had no legitimate expectation of privacy and the *Payton* rule did not apply.[48]

"The officers therefore needed no warrant to temporarily 'seize' the occupants and

conduct a limited investigation, and such an investigation is constitutional so long

as it was reasonable in all the circumstances."[49]

      Nieves contends that under *Gori,* he was "seized" inside of the

Apartment, and, because Nieves did not open the door voluntarily to an invitee, the

*Payton* rule should apply.[50]  Thus, according to Nieves, exigent circumstances were

required to permit the officers to make a lawful warrantless arrest.[51]  Contrary to

Nieves's assertion, however, the Second Circuit in *Gori* expressly refrained from

deciding the precise question presented by Nieves, noting that because "[t]he

*Payton* rule . . . is directed primarily at warrantless *physical* intrusion into the

home,"[52] "[i]t is unclear whether *Payton*'s solicitude is aroused when a *dwelling is*

---

[48]    *See id.* at 53.

[49]    *Id.*

[50]    *See* Pl. Mem. at 3-4.

[51]    *See id.*

[52]    *Gori,* 230 F.3d at 51 (citing *Payton,* 445 U.S. at 585-86 ("*[P]hysical entry* of the home is the chief evil against which the wording of the Fourth Amendment is directed.") (quotation marks and citation omitted) (emphasis added) and *New York v. Harris,* 495 U.S. 14, 17 (1990) ("*Payton* was designed to protect the *physical* integrity of the home.") (emphasis added)).

11

*penetrated by the voice of a police officer* standing outside. The facts of this case,

however, do not draw us into that debate."[53] Here, as in *Gori,* there was no

physical entry of the Apartment by the officers before they arrested Nieves. While

he may have been "seized" inside the Apartment based on the officers' exercise of

authority from outside of the Apartment, the Second Circuit has not yet ruled that

exigent circumstances are required before the police may make such a seizure.[54]

Thus, the January 26 Opinion did not err in this regard.

Nieves also quarrels with this Court's finding that Nieves's false

arrest claims should be limited to the time period from arrest until the discovery of

narcotics because defendants did not establish exigent circumstances prior to

---

[53]     *Id. Cf. Loria,* 306 F.3d at 1284 ("We believe that it is clear that *by
stepping into the house,* Gorman crossed *Payton's* 'firm line' ['drawn . . . at the
entrance to the house'] and implicated its protections.") (quoting *Payton,* 445 U.S.
at 590) (emphasis added).

[54]     This case is also distinguishable from those cited in *Gori* where
"police surround a dwelling, flood it with searchlights, and order evacuation over a
bullhorn." *Gori,* 230 F.3d at 52 n.2 (citing *United States v. Morgan,* 743 F.2d
1158, 1164-67 (6th Cir. 1984) (finding a *Payton* violation on facts similar to those
stated in *Gori*) and *Sharrar v. Felsing,* 128 F.3d 810 (3d Cir. 1997) (finding
*Payton* violation where "SWAT team surrounds a residence with machine guns
pointed at the windows and then persons inside are ordered to leave the house
backwards with their hands raised"). Should the Circuit decide that Nieves was
seized "inside" the Apartment because he left it solely in response to what Nieves
contends was an exercise of police authority, qualified immunity would still be
appropriate as the officers would not have violated clearly established law in
arresting Nieves outside the Apartment.

entering the Apartment and finding the narcotics.[55]  In the January 26 Opinion, this Court, applying *Townes v. City of New York*, held that "[o]nce the narcotics were discovered, [ ] the officers had probable cause to arrest Nieves. That the narcotics were found pursuant to an arguably unreasonable entry and search is irrelevant because the fruit of the poisonous tree doctrine is inapplicable to civil actions arising under section 1983. Therefore, Nieves' false arrest claim is viable, but only for the period between his initial arrest and the discovery of the narcotics."[56]

Nieves takes issue with this Court's application of *Townes* and asserts that there is a question of fact as to whether Nieves's false arrest claims may extend past the discovery of the narcotics.[57]  However, Nieves fails to cite any controlling case that supports that assertion and does no more than reargue whether and how *Townes* should apply.  Nothing in Nieves's argument changes this Court's prior analysis or undermines the Court's conclusions.  Nieves's argument is one for appeal, not for a motion for reconsideration.[58]

---

[55]    *See* Pl. Mem. at 7-9.

[56]    *Nieves*, 2010 WL 330205, at *3 (citing *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999)).

[57]    *See* Pl. Mem. at 7-9.

[58]    *See In re Refco Capital Markets, Ltd. Brokerage Customer Secs. Litig.*, No. 06 Civ. 643, 2008 WL 4962985, at *1 (S.D.N.Y. Nov. 20, 2008) ("A motion for reconsideration is not an opportunity for a losing party to advance new arguments to supplant those that failed in the prior briefing of the issue.").

## B.   Unreasonable Entry and Search Claim

In the January 26 Opinion, the Court also dismissed Nieves's

unreasonable entry and search claims because Nieves provided no evidence of any

compensatory injury.[59]  Nieves correctly points out that even in the absence of

colorable compensatory injury, a jury could award Nieves nominal or punitive

damages.[60]  As a result, Nieves's unreasonable entry and search claim is reinstated

and considered in light of the original briefing by Nieves and defendants.

Defendants asserted that Nieves's illegal entry and search claims

should be dismissed for lack of standing because, according to defendants, Nieves

did not have a legitimate expectation of privacy in the Apartment.[61]  I disagree.  To

have standing to object to an entry and search of a home under the Fourth

---

[59]    *See Nieves*, 2010 WL 330205, at \*2 (citing *Heck v. Humphrey*, 512
U.S.477, 487 n.7 (1994)).

[60]    *See* Nieves Mem. at 9-10 (citing *Atkins v. New York City*, 143 F.3d
100, 103 (2d Cir. 1998) ("A section 1983 plaintiff is entitled to nominal damages
only in the absence of proof of actual injury.") and *Robinson v. Cattaraugus Cty.*,
147 F.3d 153, 162 (2d Cir. 1998) ("[I]n Section 1983 cases . . . punitive damages
may be awarded even in the absence of a compensatory award.")); *see also Amato
v. City of Saratoga Springs N.Y.*, 170 F.3d 311, 317 (2d Cir. 1999) ("While the
main purpose of a § 1983 award is to compensate individuals for injuries caused by
the deprivation of constitutional rights, a litigant is entitled to an award of nominal
damages upon proof of a violation of a substantive constitutional right even in the
absence of actual compensatory injury.").

[61]    *See* Defendants' Memorandum of Law in Support of Their Motion for
Summary Judgment (Docket No. 33) ("Def. SJ Mem.") at 4-8.

Amendment, a plaintiff must show that he had a "'legitimate expectation of privacy'" in the place searched.[62]  "This inquiry involves two distinct questions: first, whether the individual had a subjective expectation of privacy; and second, whether that expectation of privacy is one that society accepts as reasonable."[63]  "A protected privacy interest has been found in a wide array of circumstances, ranging from ownership or regular occupancy of a home, to status as an overnight guest in someone else's home, or even in someone else's hotel room, to a rental storage unit, to one's business premises, including the desk drawers and file cabinets contained therein, as well as the contents of one's office computer."[64]

It is undisputed that Nieves had been friends with the Apartment's owner for several years, spent the night in the Apartment about five times a month, had a key to the Apartment, kept personal items there, and was the sole occupant at the time the officers arrived at the Apartment.[65]  Nieves also claims that he was asleep at the time the officers arrived and that he assisted the Apartment's owner

---

[62]     *U.S. v. Hamilton*, 538 F.3d 162, 167 (2d Cir. 2008) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)).

[63]     *Id. Accord Minnesota v. Carter*, 525 U.S. 83, 88 (1998).

[64]     *Hamilton*, 538 F.3d at 167-68 (citations omitted).

[65]     *See Nieves*, 2010 WL 330205, at *1.

with some of the expenses.[66] These facts are sufficient to establish that Nieves had

a legitimate expectation of privacy in the Apartment and has standing to contest the

officer's search after the arrest.[67]

Despite the fact that Nieves was asleep, alone, in the Apartment at the

time the officers arrived, defendants contend that Nieves could not have a

legitimate expectation of privacy in the Apartment because he was not an overnight

guest.[68] By his own testimony, he planned to leave later that day, rather than stay

overnight as he has done in the past.[69] But the Supreme Court's assessment of *why*

---

[66]    *See id.*

[67]    *See Jones v. United States*, 362 U.S. 257, 259 (1960) (finding a
legitimate expectation of privacy in an apartment where the petitioner was
permitted to use the apartment, had a key to the apartment and kept clothes at the
apartment, but paid nothing for its use, had only slept there "maybe a night," and at
the time of the entry was the sole occupant of the apartment); *United States v.
Hamilton*, 538 F.3d 162, 168 (2d Cir. 2008) (recognized a legitimate expectation of
privacy where the defendant had paid the $250,000 for the purchase of the house;
the purchase was registered in the name of his "common law wife," and the mother
of his child; had free access "to come and go as he pleased";  he went there "two to
three times a week for years"; but did not have a key); *United States v. Rhiger*, 315
F.3d 1283, 1287 (10th Cir. 2003) ("[The defendant's] regular presence at the
home, his overnight stays, the discovery of his receipts in the house, and his
comfort in entering the residence unannounced and taking a nap, all support our
determination that [the defendant] had an ongoing and meaningful connection to
[the owner's] home as a social guest. Therefore, [the defendant] has standing to
challenge the government's search and seizure of evidence from [the owner's]
residence.").

[68]    *See* Def. SJ Mem. at 5-8.

[69]    *See Nieves,* 2010 WL 330205, at *1.

16

overnight guests are entitled to a legitimate expectation of privacy undermines

defendants' argument:

> From the overnight guest's perspective, he seeks shelter in
> another's home precisely because it provides him with
> privacy, a place where he and his possessions will not be
> disturbed by anyone but his host and those his host allows
> inside. *We are at our most vulnerable when we are asleep*
> *because we cannot monitor our own safety or the security*
> *of our belongings.* It is for this reason that, although we
> may spend all day in public places, when we cannot sleep
> in our own home we seek out another private place to sleep,
> whether it be a hotel room, or the home of a friend. Society
> expects at least as much privacy in these places as in a
> telephone booth-"a temporarily private place whose
> momentary occupants' expectations of freedom from
> intrusion are recognized as reasonable."[70]

Indeed, the Second Circuit has recognized that "[t]here is no authority for the

proposition that one need live in the premises, or exercise control over them, in

order to enjoy a privacy interest in those premises."[71]

Nieves had a legitimate expectation of privacy in the Apartment and

standing to challenge the allegedly illegal entry.  Because the parties dispute the

circumstances giving rise to the officer's entry – *i.e.*, whether the officers entered

the closed door of the Apartment after arresting Nieves or whether Nieves, in fact,

---

[70]     *Minnesota v. Olson*, 495 U.S. 91, 99 (1990) (quoting *Katz v. United*
*States*, 389 U.S. 347,  361 (1967) (Harlan, J., concurring)) (emphasis added).

[71]     *Hamilton*, 538 F.3d at 169.

invited the officers inside – is a question of fact for a jury. As a result, Nieves's

illegal entry and search claim is reinstated for trial.

## V.    CONCLUSION

For the foregoing reasons, Nieves's motion for reconsideration is

granted in part and denied in part. An exception to the strict deadline regarding

motions for reconsideration has been made in this instance in the interest of justice

and because Nieves previously appeared *pro se.* No additional extensions –

particularly with regard to the October 18, 2010 trial date – will be granted. The

Clerk of the Court is directed to close this motion (Docket No. 54). A conference

is scheduled for May 27, 2010 at 4:00 p.m. in Courtroom 15C.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            May 18, 2010

18

## - Appearances -

**For Plaintiff:**

Christopher N. Lavigne, Esq.
Sean C. Marlaire, Esq.
Sean J. Young, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square, 42nd Floor
New York, New York 10036
(212)735-3739

**For Defendants:**

Diep Nguyen
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, New York 10007
(212) 341-9848